**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHERINE L.[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

Case No. 3:24-cv-140

Rice, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Catherine L. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **REVERSED and REMANDED**, for an immediate award of benefits because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Social Act in November 2014, alleging disability beginning on May 15, 2012. (Tr. 216-27). The applications were both denied on initial consideration (Tr. 70-95) and reconsideration. (Tr. 98-107). In July 2017, following a hearing an ALJ found Plaintiff not disabled. (Tr. 13-37, 1134-59). This ALJ's decision was remanded by the U.S. District Court for the Southern District of Ohio on April 10, 2019. (Tr. 1165-72). In January 2020, after another hearing,

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

the same ALJ found Plaintiff not disabled; this decision was then jointly remanded by the parties. (Tr. 1077-1105, 1925-26). The Appeals Council ordered the remanded case to be heard by a different ALJ in June 2022. (Tr. 1927-33). In February 2023, ALJ Nicholas Schwalbach held a hearing on Plaintiff's applications. Plaintiff was represented by counsel and testified on her own behalf. (Tr. 1874-1918). At the hearing, a medical expert, David Peterson, Ph.D., testified regarding the evidence in the record. A vocational expert also testified regarding work available in the national economy. (Tr. 1900-18). On March 14, 2023, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 1803-43).

Plaintiff was born in 1970 and was 52 years old at the time of the ALJ's decision. (Tr. 216). She graduated high school and has past relevant work as a waitress and home attendant. She suffers from bipolar disorder, an anxiety disorder and PTSD resulting from prior sexual assaults as well as emotional and physical abuse. She also has a long history of drug and alcohol abuse. She reported first trying alcohol at age 13 and drugs around age 15. (Tr. 2137).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "residuals of a left anterior cruciate ligament tear, degenerative disc disease, degenerative joint disease of the right shoulder; diabetes mellitus; hypertension, bipolar disorder; polysubstance abuse, anxiety, post-traumatic (PTSD), and borderline personality disorders". (Tr. 1809). The ALJ concluded that including the Plaintiff substance use, the severity of the claimant's impairments meet the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1. The ALJ further determined that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work

activities; therefore, Plaintiff would have a severe impairment or combination of impairments. (Tr. 1816).

Next, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Id. Despite these impairments, the ALJ determined that if Plaintiff stopped the substance abuse, Plaintiff retains the RFC to perform medium work subject to the following limitations:

> 1) lifting and/or carrying up to 50 pounds occasionally and 25 pounds frequently; 2) standing and/or walking for a combined total of six hours and sitting for six hours during an 8-hour workday; 3) frequent reaching (including overhead) with right upper extremity; 4) frequent stooping, crouching, crawling, kneeling, and climb ramps and/or stairs; 5) no climbing ladders, ropes, or scaffolds or work around hazards such as unprotected heights or dangerous machinery; 6) able to understand, remember, and carry out simple instructions and routine tasks; 7) able to use judgment to make simple work-related decisions; 8) can perform goal-oriented work (e.g., office cleaner) but is unable to perform at a production-rate pace (e.g., assembly line work); 9) occasion and superficial interaction with coworkers and supervisors but no teamwork or tandem tasks ("superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice); 10) no contact with the public as part of job duties; 11) occasional changes in an otherwise routine work setting explained in advance to allow time for adjustment to new expectations; and 12) no access to drugs or alcohol.

(Tr. 1821-22). The ALJ concluded that if Plaintiff stopped the substance abuse, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 1830). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred by: (1) failing to find that absent substance abuse, Plaintiff is cable of sustaining full time employment; and (2) failing to properly evaluate whether Plaintiff was disabled prior to or after the alleged improvement period. Upon close analysis, I conclude that Plaintiff's first assignment of error is dispositive and is well-taken.

**I. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of

> choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is not supported by Substantial Evidence**

Under U.S.C. §423(d)(2)(C), an individual cannot be considered disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. The key factor in this analysis is whether the individual would still be found disabled if they stopped using drugs or alcohol. *Monateri v. Commissioner of Social Sec*., 436 Fed.Appx. 434 (6th Cir. 2011). The ALJ is further instructed to "evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 CFR § 416.935(b)(2).

Thus, the ALJ first determines whether the claimant is disabled in view of all limitations, including those caused by substance abuse. See 20 C.F.R.§ 404.1535(a); Social Security Ruling (SSR) 13-2p (evaluating cases involving drug addiction and alcoholism). If the claimant would be disabled but the record includes medical evidence of drug addiction or alcoholism, the ALJ then determines what limitations would remain absent substance abuse. See 20 C.F.R. § 404.1535(b)(2). If the claimant would not be disabled absent substance abuse, then substance abuse would be material to a finding of disability. See id. (b)(2)(i). It is Plaintiff's burden to prove disability, and this burden remains on Plaintiff throughout the Commissioner's analysis of materiality. See SSR 13-2 ("[I]t is our longstanding policy that the claimant continueso have the burden of proving disability throughout the DAA materiality analysis.")

Courts have emphasized that the materiality of substance abuse must be determined based on evidence of whether disabling limitations persist during periods of sobriety. For example, in *Bartley v. Barnhart*, the court upheld the finding that the claimant's substance abuse was material to his disability because he had sufficient

periods of sobriety to assess whether his impairments were disabling independent of substance abuse. *Bartley v. Barnhart*, 117 Fed.Appx. 993 (6th Cir. 2004). Similarly, in *Monateri v. Commissioner of Social Sec*. the court noted that if the Commissioner cannot separate substance abuse from other impairments, substance abuse is deemed immaterial. *Monateri v. Commissioner of Social Sec*., 436 Fed.Appx. 434 (6th Cir. 2011).

Here, when considering Plaintiff's substance abuse, the ALJ determined Plaintiff met listing 12.04 for depressive, bipolar, and related disorders. (Tr 1814). See 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.04. As part of this finding, the ALJ found that Plaintiff had marked limitations in three "Paragraph B" areas: interacting with others, maintaining concentration, persistence and pace, and adapting or managing oneself. (Tr. 1814- 16).

The ALJ then considered what limitations would remain if Plaintiff stopped using substances. See 20 C.F.R. § 404.1535(b)(2). In this regard, the ALJ determined that if the substance abuse ceased, Plaintiff would not meet or medically equal the criteria of any of the medical listings. (Tr.1817). In so concluding, the ALJ noted that the record reflected a period of sobriety, and that the "medical evidence demonstrates such a period with improved mental status showing decreased severity of symptoms and improved functional capacity" (Tr. 1817).

As evidence of Plaintiff's sobriety, the ALJ noted that treatment records from South Community indicated a period of sobriety beginning in November of 2015, as evidenced by the claimant's reporting on January 14, 2016, that she had remained sober with the exception of two drinks over the past 3 months. (Tr. 1818) (internal citations omitted). In February 2016, Plaintiff reported using crack and drinking twice a month. Id. The ALJ noted that Plaintiff remained rather sober for the next two years with the major stressor reported as relationship problems with her alcoholic boyfriend. Id.

The ALJ further noted that on June 27, 2016, Plaintiff reported doing well and that she was drinking less with more energy, and reported that her depression was not as debilitating, that she could meet her goals, and that she functioned well four days per week. Id. Plaintiff was arrested for domestic violence but continued to report that she functioned well four days per week on July 28, 2016. Id. On September 2, 2016, Plaintiff reported that she had been in jail for fighting, but there was no report of substance or alcohol. Id. On November 7, 2016, the ALJ further noted that Plaintiff reported maintaining her sobriety, stating that she only drank alcohol one time in the past eight weeks. Id. In December 2016, Plaintiff reported that her depression improved and her mental status examination revealed a euthymic mood, logical thought process, full orientation, clear speech, and the claimant was cooperative.

On January 5, 2017, the ALJ noted that Plaintiff reported abstinence from alcohol with the exception of a few times drinking beer and stated that she was getting along with boyfriend better, not fighting as much, and getting along well with her children. Id. On March 3, 2017, Plaintiff reported that she was functioning well at least four days per week, was doing "mostly well," and was not fighting as much with her boyfriend. Id. On May 31, 2017, the claimant reported no use of alcohol or drugs and felt that her medications were working well. Id.

The ALJ also considered the medical opinions of record. Notably, in 2016 Plaintiff's treating physiatrist Dr. Longo, opined that Plaintiff had marked limitations in almost all work-related functional areas and was unemployable. (Tr.1828-29, discussing Tr. at 744, 900). While the ALJ assigned controlling weight to Dr. Longo's opinion for the periods of substance abuse, the ALJ found that the opinion was not entitled to controlling weight regarding her mental functioning in the absence of substance abuse because "it

is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not consistent with the substantial evidence of record." (Tr. 1828). The ALJ explained that Dr. Longo's opinion was given no more than minimal weight in the absence of substance abuse because it was inconsistent with the subsequent treatment records from South Community, which documented "improved control of symptoms with sobriety and medication, improved activities of daily living, and multiple essentially normal mental status examination findings outside of brief periods of exacerbations related to situational stressors." (Tr. 1829).

The ALJ considered the opinion of Dr. Peterson, who testified at the administrative hearing that the severity of the Plaintiff's mental impairments, including the effects of substance abuse, satisfied the requirements of section 12.04 of Appendix 1. The ALJ found that Dr. Peterson's testimony concerning the lack of any extended period of sustained sobriety is contradicted by the evidentiary record. The ALJ found that Dr. Peterson's disability finding was unsupported by the evidentiary record. In this regard, the ALJ noted the record evidence indicates that Plaintiff did not engage in any significant substance abuse for an extended period in 2016, 2017, and 2018. The ALJ also noted that treatment notes document improved mental status with few to no observations of mental status abnormalities during sobriety. (Tr. 1829).

In light of the foregoing, the ALJ determined that the record does "document a period of extended sobriety and treatment records show improved mental status and functioning, as well as an ability to work with restrictions when she does not abuse substances". (Tr.1819-20). See *Bartley v. Barnhart*, 117 F. App'x 993, 997 (6th Cir. 2004) ("[T]he ALJ looked to periods of sobriety in the record to determine whether Bartley suffers from a work-limiting mental illness independent of substance abuse. That analysis is fully

consistent with 20 C.F.R. § 416.935.”). A such, the ALJ found that Plaintiff had no more than moderate limitations in the Paragraph B criteria when she was not using substances. (Tr. 1820-21). Ultimately, the ALJ determined that Plaintiff was not disabled, absent substance abuse.

Plaintiff argues, however, that the ALJ’s determination in this regard is not supported by substantial evidence. In this regard, Plaintiff contends, *inter alia*, that the ALJ erred by selectively focusing on Plaintiff’s alleged improvement during treatment and in conflating her improvement with an ability to perform full-time work activity on a sustained basis. Plaintiff also argues that the ALJ’s findings were inconsistent with the opinions of the treating and the medical expert. Upon close inspection, the undersigned finds Plaintiff’s contentions are well-taken.

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 404.1527(d)(2). An ALJ “will not give any special significance to the source of an opinion on issues reserved to the Commissioner.” *See* 20 C.F.R.§ 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence, 20 C.F.R. § 404.1546(c), and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

The ALJ is obligated to consider the record as a whole. *Hurst v. Secy'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). “In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would

change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him."))

Here, in formulating Plaintiff's RFC, the ALJ determined that Plaintiff showed "improvement" in her mental health symptoms with a purported period of sobriety in parts of 2016, 2017, and 2018. In this regard, the ALJ cited numerous treatment records indicating that Plaintiff reported she was "ok" or "better" or "doing well" at times, and that she was "stable." (See Tr. 1811-1812, 1818, 1819).

Despite such findings, Plaintiff asserts that the treatment records during the alleged "improvement" period document that she had increased anxiety and depression in November 2016, despite reporting abstinence from drugs and alcohol. (Tr. 1581.) She was observed to be depressed and angry on a mental status exam. (Tr. 1584.) The next month in December 2016, Plaintiff was having problems managing her anger and was afraid she would end up in jail and unable to see her kids. (Tr. 1590.) She was again observed to be anxious on a mental status exam. (Tr. 1593.)

The record also indicates that by March 2017, Plaintiff reported that she will achieve her goals when she is "able to control my anger, keep sober and get work"—which she was ultimately not able to achieve. (Tr. 1613). It was also noted that she was depressed. (Tr. 1616.) She was again observed to be depressed in June and July 2017, respectively. (Tr. 1625, 1628.). On July 26, 2017, the record indicates that Plaintiff was tearful and sad with a labile, tearful affect and she expressed some hopelessness. (Tr. 1631.) On August 11, 2017, she was again observed to be depressed and anxious. (Tr.

1634.) On September 27, 2017, Plaintiff reported that she "feels that she has not made any progress in her goals." (Tr. 1647).

In November 2017, Plaintiff reported that she had tried to work at McDonald's, but it did not work out. (Tr. 1662). By July 2018, Plaintiff reported difficulty sleeping with increased irritability and aggression, including throwing things when she was angry. (Tr. 1671.) In August 2018, she reported anger and "lashing out." (Id.) On October 29, 2018, Plaintiff reported an increase in depression with more anger, rage, and paranoia. (Id.) On November 26, 2018, she reported "recent and past thoughts of harming her boyfriend." (Tr. 1666). She was depressed on mental status exam. (Tr. 1669). A couple days later on November 28, 2018, she reported that her moods were "instable" with continued aggression and irritability, and she was "in bed often" over the Thanksgiving holiday. (Tr. 1671). She was again observed to be depressed on December 18, 2018. (Tr. 1689).

In December 2018, Plaintiff relapsed into methamphetamine use following domestic violence issues and her boyfriend leaving her. Her mental health continued to decline. Notably, the record indicates that on January 16, 2019, she was depressed and crying. (Tr. 1701). Plaintiff was hospitalized for suicide ideation in August 2020, August 2021, October 2021. Plaintiff presented to the emergency room in March 2022 complaining of shortness of breath, anxiety and hyperventilation. (Tr. 2215-2231). Plaintiff also reported methamphetamine use. Id. Treatment notes from January 2023 show continued methamphetamine use, symptoms of depressed mood and flat affect, but no thoughts of suicidal/homicidal ideation. (Tr. 3111-3152)

In light of the foregoing, Plaintiff claims the ALJ erred by selectively focusing on Plaintiff's alleged improvement during treatment and in conflating her improvement with an ability to perform full-time work activity on a sustained basis *See Hawthorne v. Comm'r*

*of Soc. Sec.*, No. 3:13–cv–179, 2014 WL 1668477, at *11 (S.D. Ohio Apr. 25, 2014) (citations omitted); *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 488, 494 (6th Cir. 2011) (finding that "the word 'better'… did not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment had subsided"); *McQueen v. Comm'r of Soc. Sec.*, No. 1:13–cv–88, 2014 WL 533496, at *9 (S.D. Ohio Feb. 11, 2014) ("There is no evidentiary basis for determining that plaintiff's depression and anxiety had 'improved' such that [the treating physician's] findings were no longer apt. Rather, review of the record demonstrates that plaintiff's mental impairments continued to fluctuate and manifest in significant symptomology").

In this regard, Plaintiff contends that while she may have shown some intermittent improvement with fluctuating symptoms, the record does not establish that she had improved to the point of being able to sustain employment on a full-time basis. The undersigned agrees.

Notably, during the alleged period of sobriety when Plaintiff was "doing well" the ALJ also found that Plaintiff still reported drinking, smoking crack and was arrested for domestic violence and was incarcerated for fighting. (Tr. 1818). The ALJ also found that Plaintiff functioned well four days out of the week and was active three days a week. Id. Arguably, such findings do not establish a period of sobriety given that Plaintiff reported drinking and using drugs. More importantly, such findings are inconsistent with competitive full-time work. Namely, the Commissioner's own regulations define RFC as the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, which means eight hours a day, for five days a week, or an equivalent work schedule. See SSR 96-8p (1996 WL 374184). As

such "functioning" four days does not equate to sustaining work activities on a competitive, full-time basis, i.e. eight hours a day, for five days a week.

The undersigned also recognizes that the ALJ found that during the alleged period of sobriety/improvement, Plaintiff was able to perform "significantly more activity including household chores and socializing with her children." (Tr. 1826). However, as noted by Plaintiff, an individual's ability to perform some basic activities of daily living is not comparable to an ability to sustain full-time employment. See also 20 C.F.R. § 404.1572(c) and § 416.972(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 248-249 (6th Cir. 2007) (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising, and watching the news are not comparable to typical work activities); *Cohen v. Sec'y Dept. Health & Human Servs*., 964 F.2d 524, 530 (6th Cir. 1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).

Additionally, the reasons given by the ALJ for discounting the opinions of Dr. Longo and Dr. Peterson are not substantially supported by the record. As noted above, the ALJ assigned controlling weight to Dr. Longo's opinion for the periods of substance abuse, but the ALJ found that the opinion was not entitled to controlling weight regarding her mental functioning in the absence of substance abuse. The ALJ acknowledged that this Court previously determined that the record supported Dr. Longo's opinion that Plaintiff's mental limitations were disabling. (Tr. 1828). However, the ALJ found the treatment notes since Dr. Longo's assessment confirm that Plaintiff "experienced a period of sobriety with

improved functioning and significantly decreased symptoms." Id. In this regard, the ALJ noted that the record documented "improved control of symptoms with sobriety and medication, improved activities of daily living, and multiple essentially normal mental status examination findings outside of brief periods of exacerbations related to situational stressors." (Tr.1829).

Similarly, the ALJ discounted Dr. Peterson's disability finding (absent substance abuse) because Dr. Peterson did not find a period of extended period of sobriety. Namely, Dr. Peterson, the medical expert who testified at the hearing, testified as follows:

> Dr. Peterson: Generally speaking, my review of the record, there are no substance-related diagnoses in sustained remission. And so there isn't any point and time in the record that I can say objectively that substances aren't part of the clinical picture. So I would add to these, rule out substance-induced or exacerbated mood, anxiety and psychotic disorders. That's based on the psychoactive properties of the substances documented and the lack of any documented period of sustained remission. ….
>
> ALJ Schwalbach: Okay. If we were to take out the substance abuse, would that change your analysis of 12.04?
>
> Dr. Peterson: As the record is currently constructed, we don't have objective evidence to tell us what would happen then, Your Honor. ….
>
> ALJ Schwalbach : Okay, so it's your opinion that the paragraph A and B criteria would have been met dating back to June of 2012? Dr. Peterson: That's right.

(Tr. 1902-1905).

The ALJ, however, found that Dr. Peterson's conclusion is "unsupported by the evidentiary record." (Tr. 1829-1830). In this regard, the ALJ determined that Plaintiff refrained from engaging in any significant substance abuse for an extend period in 2016, 2017, and 2018; namely that the record reflects an extended period of sobriety with corresponding improvement in the Plaintiff's mental status findings and function, which

Dr. Peterson did not discuss. However, as detailed above, even during this alleged period of sobriety, Plaintiff reported drinking, smoking crack and was arrested for domestic violence and was incarcerated for fighting. Moreover, the ALJ's finding that Plaintiff could "function" four days a week and was active three days a week, does not equate to the ability to perform sustained gainful employment as defined by Agency regulations and controlling law.

In light of the foregoing, the undesigned finds that the ALJ's findings are not supported by substantial evidence.

**C. An Immediate Award of Benefits is Warranted**

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *Blakley, 581 F.3d at 410; Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Humans Servs*., 17 F.3d 171, 176 (6th Cir. 1994)).

Here, the evidence establishes that remand for an award of benefits is warranted. This case has pending over 10 years and has been remanded by the Appeals Council and the District Court. The record contains overwhelming evidence of disability, and/or strong evidence with an absence of contrary "substantial evidence" that could support a non-disability finding on remand. Dr. Longo and Dr. Peterson's well-supported opinions both indicate that Plaintiff's mental impairments meet Listing 12.04 and are disabling. As

such, the record strongly supports Plaintiff's inability to engage in either her past relevant work or any other sustained unskilled work activity at the SGA level. *Accord Hill v. Berryhill,* 2017 WL 1593476, at *7-8.

**III. Conclusion**

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED and REMANDED** for an immediate award of benefits.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHERINE L. | Case No. 3:24-cv-140

Plaintiff,

v.

Rice, J.
Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).